626 So.2d 1205 (1993)
Denise BURDEAUX and Dennis Wayne Burdeaux, Plaintiffs-Appellants,
v.
Dr. Frank K. CLINE, Jr., Dr. Sidney L. Bailey and the Orthopedic Clinic of Monroe, Defendants-Appellees.
No. 25219-CA.
Court of Appeal of Louisiana, Second Circuit.
October 27, 1993.
Rehearing Denied November 24, 1993.
*1206 James R. Dawson, Shreveport, for appellants.
Theus, Grisham, Davis & Leigh by Ronald L. Davis, Jr., Monroe, for appellees.
Before SEXTON, STEWART and WILLIAMS, JJ.
STEWART, Judge.
Dennis and Denise Burdeaux, husband and wife, filed suit against Drs. Cline and Bailey, and The Orthopedic Clinic for medical malpractice. Plaintiffs-appellants allege that Dr. Cline negligently applied a splint to her hand at the time of surgery for carpal tunnel syndrome, and that both he and Dr. Bailey were negligent in following up on her calls to their office on February 2 and 4, 1988 during the immediate post-operative period.
*1207 The instant petition for damages was filed June 17, 1992. The surgery occurred on January 27, 1988. The trial court granted defendants' exception of prescription, and plaintiffs, Mr. and Mrs. Burdeaux, appeal. At issue is whether this cause of action is prescribed, pursuant to LSA-R.S. 9:5628.

Relevant Dates
Mrs. Burdeaux first saw Dr. Francis X. Cline, Jr. on January 20, 1988. He diagnosed her as having carpal tunnel syndrome of the right hand. Dr. Cline performed surgery on her right hand on January 28, 1988. Due to pain and problems moving her fingers, she consulted several physicians during February through June 1988.
In mid-April 1988, she went to attorney Jack M. Bailey, Jr. because she did not feel she was getting the necessary medical attention and to see whether she had a malpractice claim. Upon recommendation by Attorney Bailey, Mrs. Burdeaux consulted with Dr. Jorge Martinez on April 20, 1988.
Mrs. Burdeaux saw Dr. David Kline in New Orleans in June 1988 who told her that the problems she was having were caused by scarring and by the splint being applied too tightly at the time of the initial surgery.
In January 1989, Mr. Bailey filed a request for medical review panel with the Division of Administration.
On April 24, 1989, plaintiffs filed suit against defendants. Defendants' filed an exception of prematurity for failure to present the matter to a medical review panel.
On October 11, 1989, plaintiffs filed a request for medical review panel with the proper agency, the Commissioner of Insurance. According to plaintiffs-appellants, the medical review panel was "dissolved without rendering an opinion."
In November 1989, defendants' exception of prematurity was granted.[1]
On June 17, 1992, plaintiffs filed the instant suit against defendants. Defendants filed an exception of prescription. The trial court granted this exception, without reasons, on December 3, 1992.

Burden of Proof
Generally, the burden of proving that a suit has prescribed rests with the party pleading prescription. Tranum v. Hebert, 581 So.2d 1023 (La.App. 1st Cir.1991), writ denied, 584 So.2d 1169 (La.1991); Arabie v. Northwest Mining Corp., 567 So.2d 783, 785 (La.App. 3d Cir.1990), writs denied, 571 So.2d 656, 571 So.2d 657 (La.1990). However, when the plaintiff's petition shows on its face that the prescriptive period has run, and the plaintiff relies upon a suspension or interruption of prescription, the burden is on the plaintiff to prove the suspension or interruption. Restrepo v. Fortunato, 556 So.2d 1362 (La.App. 5th Cir.1990), writ denied, 560 So.2d 11 (La.1990); Tranum and Arabie, both supra.
On the face of the petition, appellants' action has prescribed. Appellants, Dennis and Denise Burdeaux, therefore bear the burden of showing a suspension or interruption.

Contra non valentem agere nulla currit praescriptio
Appellants first argue that, by virtue of the doctrine of contra non valentem agere nulla currit praescriptio, the June 1988 consultation with Dr. David Kline was the moment at which prescription commenced running. This consultation was when Dr. Kline told Mrs. Burdeaux that her problematic recovery from the surgery was because the splint was applied too tightly at the time of the surgery and because of scarring. Appellants assert that, prior to this consultation, they had no knowledge of the relationship between Mrs. Burdeaux's medical problems and the medical care received.
Actions for medical malpractice prescribe one year from the date of the alleged act of malpractice or within one year from the date of the discovery of the alleged act. However, all actions must be brought within three *1208 years from the date of the alleged act or they are forever barred. LSA-R.S. 9:5628.
Under the doctrine of contra non valentem, prescription does not begin to run until the plaintiff knows sufficient facts and has a reasonable basis for filing suit against a certain defendant. Restrepo, supra, 556 So.2d at 1364. This doctrine entails an exception to prescription for each of four situations. The fourth exception of the doctrine of contra non valentem is the "discovery rule" that prescription does not run against one who is ignorant of the facts upon which his cause of action is based as long as such ignorance is not willful, negligent or unreasonable. In re Howard, 573 So.2d 472, 474 (La.1991); White v. West Carroll Hospital, Inc., 613 So.2d 150 (La.1992). Appellants have not alleged any of the other exceptions from the doctrine of contra non valentem.
Under the fourth exception of the doctrine of contra non valentem, prescription does not begin to run until the plaintiff knows sufficient facts and has a reasonable basis for filing suit against a certain defendant. Contra non valentem in a medical malpractice suit has been embodied in LSA-R.S. 9:5628 in which the "one year from the date of the discovery" rule is expressly made inapplicable after three years from the act, omission or neglect. Hebert v. Doctors Memorial Hosp., 486 So.2d 717, 724-725 (La. 1986); Chaney v. State of Louisiana, Through the Dept. of Health and Human Resources, 432 So.2d 256, 259 (La.1983).
The petition states that the alleged acts of medical malpractice occurred between January 20, 1988 and February 25, 1988. The instant suit was not filed until June 17, 1992, more than three years after the alleged acts of malpractice. Accordingly, the discovery rule is inapplicable to this malpractice action and we find no merit to appellants' argument that the trial court erred in improperly applying the discovery rule of the contra non valentem doctrine.

Was prescription interrupted by the April 24, 1989 suit?
The Burdeaux's filed a prior suit against the defendants on April 24, 1989.
LSA-C.C. Art. 3462 provides:
Prescription is interrupted when the owner commences action against the possessor, or when the obligee commences action against the obligor, in a court of competent jurisdiction and venue. If action is commenced in an incompetent court, or in an improper venue, prescription is interrupted only as to a defendant served by process within the prescriptive period.
The LSA-R.S. 9:5628 one year prescriptive period commences running on the date the injured party discovers or should have discovered the facts upon which her cause of action is based. If, prior to April 24, 1988, plaintiffs knew or had constructive knowledge of facts upon which this medical malpractice action is based, the one year prescription would have tolled before the April 24, 1989 suit was filed, and there would have been nothing for that suit to interrupt. On the other hand, if plaintiffs did not discover the facts which form the basis for the malpractice claim until June 1988, as they assert in the instant petition, then the April 24, 1988 suit interrupted the one year prescription as long as that suit was pending. For this reason, we examine when prescription began to run.
For a detailed discussion of what constitutes constructive knowledge, see Taylor v. Giddens, 607 So.2d 878 (La.App. 2d Cir. 1992), affirmed in part, reversed in part, and remanded, 618 So.2d 834 (La.1993); Harlan v. Roberts, 565 So.2d 482, 486 (La.App. 2d Cir.1990), writ denied, 567 So.2d 1126 (La. 1990); Maung-U v. May, 556 So.2d 221, 223 (La.App. 2d Cir.1990), writ denied, 559 So.2d 1385 (La.1990); Griffin v. Kinberger, 507 So.2d 821 (La.1987).
Each case must be decided on its own peculiar facts. The law does not require that a patient be informed by an attorney that he has a medical malpractice action before prescription will begin to run. Likewise, it is not a requirement that a patient be informed by a medical practitioner of possible malpractice before prescription will begin to toll. See Harlan and Taylor, both supra.
Mrs. Burdeaux responded as follows, during her December 28, 1990 deposition, to *1209 questions by defense counsel about why she went to see Attorney Jack Bailey:
Q So the purpose of going to [Mr.] Jack Bailey was to find out if you did have a viable medical malpractice claim?
....
A Yes.

MR. DAWSON: [Counsel for plaintiffs]
I'm sorry. The purpose of seeing Mr. Jack Bailey was towhat?

Mr. Davis: [Counsel for defendants]
For him to find out whether or not she had a viable medical malpractice claim against Dr. Cline.
Q That's why you went to him?
A Yeah. Well, yeah, I went to him because I felt like I had not been treated right.
Q Fine. And I believe you told us that you were somewhat surprised to later learn that in the medical malpractice complaint that attorney Jack Bailey filed, that he also included, as a defendant, Dr. Sid Bailey.
A Right.
....
Q And that's why you went to the lawyer; you knew something was wrong with your hand.
A Yeah. I felt likeI felt like I had I felt like I had been done wrong. I don't remember if I just out and out thought, "Geez, he screwed my arm up," but I knew something was wrong and I felt like I had been done wrong.
Q By Dr. Frank Cline?
A Right.
Thus, by the time she consulted with Mr. Bailey about the possibility of a malpractice claim against Dr. Cline, Mrs. Burdeaux had recognized that her condition might be related to the treatment she received from Dr. Cline. Although we do not know the exact date in April when Mrs. Burdeaux went to see Mr. Bailey, the record reflects that Mr. Bailey referred her to Dr. Martinez, whom she saw on April 20, 1988. Therefore, her consultation with Mr. Bailey was prior to April 20, 1988.
For these reasons, and for those stated in Harlan and Taylor, supra, we find that the plaintiffs, either actually or constructively, discovered the alleged acts, omissions, or neglect before April 20, 1988. Thus, because the action had prescribed before April 20, 1989, the April 24, 1989 suit did not interrupt the running of the one year prescription.

Was prescription suspended by the filing with the Division of Administration?
In their supplemental and reply brief, appellants argue that the timely filing of a medical malpractice claim with the wrong state agency should afford the claimant the same protection as if the claim were filed with the appropriate state agency. Appellants assert that, assuming arguendo that prescription began to run at the time Mrs. Burdeaux sought legal advice from Mr. Bailey, the request for a medical review panel was received by the Division of Administration on January 30, 1989 and should therefore suspend the tolling of prescription. The proper state agency for this filing was that of the Commissioner of Insurance. Appellants cite, and we have found, no statutory or jurisprudential support for this argument.
The filing of medical malpractice claims is governed by LSA-R.S. 40:1299.47 A(2)(a), which provides:
The filing of the request for a review of a claim shall suspend the time within which suit must be instituted, in accordance with this Part, until ninety days following notification, by certified mail, as provided in Subsection J of this Section, to the claimant or his attorney of the issuance of the opinion by the medical review panel, in the case of those health care providers covered by this Part, or in the case of a health care provider against whom a claim has been filed under the provisions of this Part, but who has not qualified under this Part, until sixty days following notification by certified mail to the claimant or his attorney by the board that the health care provider is not covered by this Part. The filing of a request for review of a claim shall suspend the running of prescription against all solidary obligors, including but not limited to health care providers, both *1210 qualified and not qualified, to the same extent that prescription is suspended against the party or parties that are the subject of the request for review.
The duty rests with the plaintiff to timely file her complaint with the Commissioner of Insurance. See Knippers v. Lambard, 620 So.2d 1368, 1374 (La.App. 2d Cir.1993).
Based upon this record, there is no showing that plaintiffs' complaint was filed with the Commissioner of Insurance before October 1989. Appellants' argument that their timely filing with the Division of Administration in January 1989 should suspend prescription is without merit.

Conclusion
On its face the instant petition has prescribed, pursuant to LSA-R.S. 9:5629, because it was filed (1) more than one year from the date that plaintiffs discovered the act, omission or neglect, and/or (2) more than three years from the date of the alleged act, omission or neglect. Plaintiff-appellants failed to carry their burden of showing an interruption or suspension of prescription which would render the instant action timely filed.
The January 1989 filing with the Division of Administration had no effect on the running of prescription. The LSA-R.S. 9:5628 one year prescription had tolled before the April 24, 1989 suit was filed, and before the October 1989 filing with the Commissioner of Insurance. Thus, this action had prescribed years before the instant suit was filed on June 17, 1992. Appellants' argumentthat they filed a timely request for a medical review panel with the Division of Administration in January 1989, a timely suit in a court of competent jurisdiction and venue in April 1989, and a subsequent timely request for a medical review panel with the Commissioner of Insurance in October 1989is without merit.
For these reasons, the trial court ruling which granted defendants' exception of prescription is affirmed at plaintiffs' costs.
AFFIRMED.
SEXTON, J., concurs.

APPLICATION FOR REHEARING
Before MARVIN, SEXTON, BROWN, STEWART and WILLIAMS, JJ.
Rehearing denied.
NOTES
[1] In brief, the parties agree that (1) the exception of prematurity was granted in November, 1989 and (2) the April 24, 1989 suit was dismissed. Defendant's brief states, and plaintiffs do not contest, that the suit was dismissed in November 1989.